IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**Brandon Hearns,**

    **Plaintiff,**

**v.**                                                **Civil action no. 1:05cv151**
                                                               **(Judge Keeley)**

**JIM RUBENSTEIN, Commissioner;**
**WILLIAM HAINES, Warden;**
**TOM RADFORD, Correctional Officer;**
**THE W.VA. DIVISION OF CORRECTIONS;**
**NATIONAL UNION FIRE INSURANCE CO. OF PA.,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On November 18, 2005, the *pro se* plaintiff, Brandon Hearns, initiated this case by filing a complaint under 42 U.S.C. § 1983 and the Federal Tort Claims Act ["FTCA"]. On July 27, 2006, the plaintiff filed an amended complaint. On August 22, 2006, the undersigned conducted a preliminary review of the file and recommended the dismissal of plaintiff's claims under the FTCA and service of the amended complaint as to the remaining claims. That report and recommendation was adopted by the Honorable Irene M. Keeley, District Judge, on November 3, 2006.

On November 27, 2006, the defendants, Jim Rubenstein, William Haines, Tom Wratchford, and the West Virginia Department of Corrections filed their Answer to the complaint with a jury demand. Also on November 27, 2006, National Union Fire Insurance Company filed a Motion to Dismiss, and on December 6, 2006, defendants, Jim Rubenstein, William Haines, Tom Radford, and the West Virginia Department of Corrections, filed their First Motion for Summary judgment with respect to

claims against or involving Tom Wratchford. On January 25, 2007, a Roseboro Notice was issued.

## II. The Pleadings

### A. The Complaint

In the amended complaint, the plaintiff asserts that he entered the Huttonsville Correctional Facility ["Huttonsville"] on or about February 26, 2004. Shortly after he entered Huttonsville, he was placed in a special treatment unit known as the G-1 Unit. The plaintiff claims that because he had received threats from a fellow inmate, Marcus Fleming, who was housed in the G-1 Unit, that he requested that the defendants move him to a different dormitory. The plaintiff further claims that on June 24, 2004, at approximately 2:00 a.m., while he was sleeping, he was viciously assaulted by Marcus Fleming, who was wielding a clothes iron. The plaintiff further claims that only one guard (Defendant Radford) was on duty in the G-1 day room at the time of the attack. In addition, the plaintiff alleges that the clothes iron was left unsecured in an unlocked cabinet in full view of the security station. As a result of the attack, the plaintiff claims that he received multiple stitches to his face, permanent damage to his eye, severe headaches, and recurring nightmares. Finally, the plaintiff alleges that he was denied further medical treatment following the initial treatment he received immediately after the attack.

The plaintiff further alleges that on November 25, 2005, while he was sleeping in his cell, he was viciously attacked by another inmate, Eric Congleton.[1] As a proximate result of this attack, the plaintiff alleges that he received multiple stitches to his face, additional damage to his eye, severe headaches, and recurring nightmares. Again, the plaintiff alleges that he was denied further medical

---

[1] The plaintiff maintains that when this second attack occurred, he was housed in Unit E-2, a special treatment unit. He further maintains that he was placed in that unit for his own protection because of his susceptibility to physical attack from other prisoners of the general population. However, the plaintiff notes that Unit E-2 houses inmates classified as being predators and/or having behavioral problems.

treatment following the initial treatment after the attack.

Based on the foregoing allegations, the plaintiff asserted the following grounds for relief:

(1) the defendants, Rubenstein, Haines, Radford, and the Division of Corrections and their officers, agents, assistants and employees individually and collectively were grossly negligent and deliberately indifferent to his safety and well being in violation of the 8th Amendment; and

(2) the defendants, Rubenstein, Haines, Radford, and the Division of Corrections and their officers, agents, assistants and employees individually and collectively failed to provide adequate follow-up medical treatment to the plaintiff and thereby failed to prevent permanent brain and eye damage.

## B. The Defendants' Answers

### Jim Rubenstein, William Haines, Tom Wratchford, and the West Virginia DOC

In their answer to the complaint, these defendants assert generally, that the plaintiff's complaint should be dismissed because:

1. The complaint fails to state a claim upon which relief can be granted;

2. The plaintiff's damages are not the proximate result of any act of negligence, recklessness, or carelessness of the defendants;

3. The acts or omissions of the defendants did not proximately cause or contribute the plaintiff's alleged injuries;

4. Plaintiff's claims are barred by failure to exhaust administrative remedies;

5. The claims are barred by the defenses of waiver, estoppel, and latches;

6. The claims are barred by the Eleventh Amendment of the United States Constitution;

7. The claims are barred by the doctrine of qualified immunity;

8. The claims are barred by the protections and immunities contained in the Statutes of the

State of West Virginia relating to claims against state governmental agency and employees.

9. The complaint may be barred by the doctrines of comparative negligence, contributory negligence, and assumption of the risk;

10. The allegations for punitive damages are barred by the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and the corresponding provisions of the Constitution of the State of West Virginia;

11. The punitive damages claim is limited pursuant to <u>Campbell v. State Farm Progeny</u>.

As well, these defendant's assert the right to add additional defenses as the same become apparent throughout the course of discovery. The answer has no supporting memorandum, nor any exhibits or affidavits.

**National Union**

In its motion to dismiss, National Union asserts that the only allegations made against it is in paragraph 9 of the complaint which states "Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, a Pennsylvania corporation is and was at all times relevant herein the insurer for the Division of correction for the State of West Virginia, pursuant to a contract agreement with the West Virginia Board of Risk and Insurance Management." Because plaintiff has not asserted any wrongdoing or any harm caused by National Union, it asserts that the complaint should be dismissed as to it under Rule 8(a)(2) of the Federal rules of Civil Procedure for the failure to state a claim upon which relief can be granted.

**TOM WRATCHFORD**

In their motion for summary judgment, the defendants, Commisioner Jim Rubenstein, Warden William Haines, and Officer Thomas Wratchford assert that the plaintiff cannot present facts to prove the claims asserted in his complaint that "Tom Radford" was the guard on duty in the unit referred to

4

by the plaintiff on the dates of the alleged assaults. More specifically, the memorandum in support of the motion for summary judgment indicates that there is no employee of the West Virginia Division of Corrections named Tom Radford. Accordingly, the defendants assume that the plaintiff is referring to Thomas Wratchford. However, as demonstrated by Exhibits A and B attached to the memorandum, Mr. Wratchford was off duty on November 25, 2005 and was working Unit F and not Unit G on June 24, 2004. Furthermore, Mr. Wratchford has submitted an affidavit that indicates that he was working the front gate on the date of the June incident and was not working Unit G. In addition, the affidavit indicates that he was not working at the facility at all on November 25, 2005, which was his regularly scheduled day off. Finally, the affidavit indicates that Mr. Wratchford has no recollection of ever having had any contact with the plaintiff and does not believe he would recognize him to see him. Accordingly, the defendants assert that Defendant Wratchford is not a proper party to this matter and must be dismissed.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957). Additionally, a district court should construe *pro se* petitions liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for *pro se* complaints raising civil rights issues).

5

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt

rather than encourage mere speculation. <u>Anderson</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u> at 587 (citation omitted).

## IV. Analysis

**A. National Union's Motion to Dismiss**

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends...(2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." <u>Migdal v. Rowe Price-Fleming International, Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

In the instant case, plaintiff lists numerous alleged constitutional violations against the defendants but makes no specific allegations against National Union. However, plaintiff asserts that National Union should be held liable in this instance because it maintains an agency relationship and/or continuing responsibility for the actions of the other defendants due to its role as an insurer of the WVDOC.

In West Virginia, "[a]n agent is one who, subject to some control of another, acts on behalf of that other as a representative in the conduct of the other's business or contractual relations with third persons." See <u>Jones v. Wolfe</u>, 203 W.Va. 613, 616, 509 S.E.2d 894, 897 (1988)(citations omitted). Therefore, "an agent is personally liable for a tort committed within the scope of an agency relationship." <u>Id</u>. The party seeking to impose liability under an agency theory has the burden of

7

proving the existence of the relationship. See Crothers v. Commodity Futures Trading Comm., 33 F.3d 405, 410 (4th Cir. 1994)(citations omitted).

Although national Union does not dispute that it is the insurer of the WVDOC, plaintiff has not provided a single piece of evidence to show that national Union exerts any type of control over the business of the DO as a result of their relationship. Accordingly, the DOC is not an agent of national Union and National Union is not personally responsible for the torts committed by the DOC or its employees, at least not beyond any obligation it may have pursuant to the parties' insurance contract.

Thus, because plaintiff has failed to show that the DOC is an agent of national Union, plaintiff can only sue national Union to the extent that National Union participated in the alleged unconstitutional acts. However, the undersigned has already found that plaintiff has failed to make any specific allegations against national Union. Therefore, plaintiff fails to state a claim for which relief can be granted against National Union , and the complaint should be dismissed as to that defendant. See Weller v. Sept. Of Social Servs., 901 F.2d 387 (4th Cir. 1990) (dismissal proper where there were no allegations against defendants).

**B. Defendant, Commissioner Jim Rubenstein, Warden William Haines and Officer Thomas Wratchford's Motion for Summary Judgment with Respect to Claims Against or Involving Tom Wratchford.**

As previously noted, the plaintiff alleges that he was first attacked on or about June 24, 2004, at 2:00 a.m., while he was locked in the G-1 Unit with approximately thirty other prisoners. The plaintiff maintains that only one guard, defendant Radford, was on duty at the time.

However, as noted in the Motion for Summary Judgment, there is no employee of the West Virginia Department of Corrections named Thomas Radford. Accordingly, the defendants believe that the plaintiff is referring to Correctional Officer Thomas Wratchford. While Officer Wratchford was on duty from 11:00 p.m. on June 23, 2004 until 6:00 a.m. on June 24, 2004, he was assigned to the

front gate during that shift. (See Affidavit of Tom Wratchford attached as Exhibit B to Defendant's Reply and Defendant's Exhibit B attached to their Memorandum filed December 6, 2006). In addition, while Officer Wratchford was on duty from 11:00 p.m. on June 24, 2004 until 6:00 a.m. on June 25, 2004, he was assigned to Unit F during that shift. (Id.)

It is pertinent to note, however, that the defendants believe that the assault referred to in plaintiff's Complaint occurred on June 23, 2004.[2] Assuming that it was at 2:00 a.m. on the 23rd, the work shift that would indicate Officer Wratchford's assignment at the time of the assault would be that for June 22, 2004. If Officer Wratchford was on duty, it can be assumed that he would have worked from 11:00 p.m. on June 22, 2004 until 6:00 a.m. on June 23, 2004. This daily shift schedule has not been tendered, and leaves open the possibility that Officer Wratchford was assigned to unit G-1 during that shift and would have been present at the time of the assault.[3]

Additionally, the plaintiff sent a letter to counsel for the defendants in reply to their Motion for Summary Judgment with respect to Tom Wratchford.[4] In it, he alleges that he "put in a request slip when I was at Huttonsville Correctional Center and asked them what officer was working the night I was assaulted. The answer was Tom Radford." In addition, the plaintiff alleges that he has a witness, Larry Scible, who saw the request, and the name Tom Radford. The undersigned recognizes that the

---

[2] See, Dckt. 35-1, footnote 2.

[3] Thomas Wratchford filed a self-serving affidavit which concludes that he "had no contact whatsoever with Brandon Hearns that I recall. Upon information and belief, I would not recognize Brandon Hearns to see him." This affidavit alone, in the undersigned's opinion is insufficient to support the award of summary judgment.

[4] The plaintiff did not file the letter. The defendants referred to it in their Reply to the Plaintiff's Motion which they originally filed on January 5, 2007. Although the defendants indicated that they attached the letter as Exhibit A as well as Tom Wratchford's Affidavit as Exhibit B, the same do not appear on CM/ECF. The defendants refiled their reply on July 5, 2007 and attached the exhibits noted.

9

plaintiff has not submitted the request slip, nor an affidavit from Larry Scible. However, the plaintiff is no longer at Huttonsville Correctional Center, but instead is at Stevens Correctional Center, and is therefore, not in direct contact with Mr. Scible. Furthermore, it is not inconceivable that the plaintiff, if he did not keep the request slip, could have misspelled the name Tom Wratchford as Tom Radford, especially since a seventeen month period lapsed between the assault and the filing of the complaint.

Given that the plaintiff is *pro se*, and the defendants have failed to supply the shift log for the date that they, themselves, believe is the date the first assault took place, it cannot be said there is no dispute as to the facts, nor that there is no dispute as to the conclusions or inferences which may be reasonably drawn therefrom. Accordingly an award of summary judgment in Tom Wratchford's favor is inappropriate at this time.

## V.  RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the Motion to Dismiss (Doc. 33) be **GRANTED**, and National Union Fire Insurance Company of Pittsburgh Pennsylvania be dismissed as a defendant in this action. It is the undersigned's further recommendation that the First Motion for Summary Judgment (Dckt. 34) be **DENIED**, and the plaintiff's Eighth Amendment claims against the remaining defendants not be summarily dismissed at this time, and the Court issue a scheduling Order to address those claims.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this

Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: July 10, 2007

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE