IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**Brandon Hearns,**

    **Plaintiff,**

v.                                             Civil action no. 1:05cv151
                                                          (Judge Keeley)

**JIM RUBENSTEIN, Commissioner;**
**WILLIAM HAINES, Warden;**
**TOM WRATCHFORD[1], Correctional Officer;**
**THE W.VA. DIVISION OF CORRECTIONS,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On November 18, 2005, the *pro se* plaintiff, Brandon Hearns, initiated this case by filing a complaint under 42 U.S.C. § 1983 and the Federal Tort Claims Act ["FTCA"]. On July 27, 2006, the plaintiff filed an amended complaint. On August 22, 2006, the undersigned conducted a preliminary review of the file and recommended the dismissal of plaintiff's claims under the FTCA and service of the amended complaint as to the remaining claims. That report and recommendation was adopted by the Honorable Irene M. Keeley, District Judge, on November 3, 2006.

On November 27, 2006, the defendants, Jim Rubenstein, William Haines, Tom Wratchford, and the West Virginia Department of Corrections (collectively "the DOC" defendants), filed their Answer to the complaint with a jury demand. Also on November 27, 2006, National Union Fire Insurance

---

[1]As noted by the order entered by Judge Keeley on August 2, 2007, defendant Tom Wratchford has replaced "Tom Radford" in the style of this case as it appears from the record that no employee named Tom Radford worked for the WVDOC at the time the events alleged in the plaintiff's complaint.

Company filed a Motion to Dismiss, and on December 6, 2006, the DOC defendants filed their First Motion for Summary judgment with respect to claims against or involving Tom Wratchford. On January 25, 2007, a Roseboro Notice was issued. On or about December 14, 2006, counsel for the DOC defendants received a handwritten pleading from the plaintiff which appeared to be a response to the defendant's Motion for summary judgment with respect to Tom Wratchford. However, the plaintiff did not file a copy with the court. On January 5, 2007, the DOC defendants filed a reply to the plaintiff's response and attached a copy of the plaintiff's letter as an exhibit. On July 10, 2007, the undersigned issued a Report and Recommendation recommending that National Union Fire Insurance Company be dismissed as a defendant in the action. In addition, the undersigned recommended that the plaintiff's Eighth Amendment claims against the DOC defendants not be summarily dismissed and the court issue a scheduling order to address those claims. On August 20, 2007, the court adopted the Report and Recommendation, granted National Union Fire Insurance Company of Pennsylvania's motion to dismiss, denied the DOC defendants' motion for summary judgment with regard to the claims against defendant Wratchford, and set a scheduling conference. On May 16, 2008, The DOC defendants filed a Motion for Summary Judgment, and on May 19, 2008, they filed a Memorandum in support thereof. On June 24, 2008, the Clerk of the Court received a letter from the plaintiff indicating that he did not understand what he was required to do in response to the Motion for Summary Judgment. On November 19, 2008, an order was entered referring this matter to the undersigned. The plaintiff's copy of the referral order was returned as undeliverable.[2]

---

[2]At the time the plaintiff initiated this complaint, he was incarcerated at the Huttonsville Correctional Center. During the course of these proceedings, he has twice notified the court of a change of address as required by the Notice of General Guidelines for Appearing Pro Se. The court's November 19, 2008 order was sent to the most recent address that had been provided by the plaintiff. The envelope was returned marked "NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD."

## II. The Pleadings

### A. The Amended Complaint

In the amended complaint, the plaintiff asserts that he entered the Huttonsville Correctional Facility ["Huttonsville"] on or about February 26, 2004. Shortly after he entered Huttonsville, he was placed in a special treatment unit known as the G-1 Unit. The plaintiff claims that because he had received threats from a fellow inmate, Marcus Fleming, who was housed in the G-1 Unit, that he requested that the defendants move him to a different dormitory. The plaintiff further claims that on June 24, 2004, at approximately 2:00 a.m., while he was sleeping, he was viciously assaulted by Marcus Fleming, who was wielding a clothes iron. The plaintiff further claims that only one guard, Defendant Wratchford, was on duty in the G-1 day room at the time of the attack. In addition, the plaintiff alleges that the clothes iron was left unsecured in an unlocked cabinet in full view of the security station. As a result of the attack, the plaintiff claims that he received multiple stitches to his face, permanent damage to his eye, severe headaches, and recurring nightmares. Finally, the plaintiff alleges that he was denied further medical treatment following the initial treatment he received immediately after the attack.

The plaintiff further alleges that on November 25, 2005, while he was sleeping in his cell, he was viciously attacked by another inmate, Eric Congleton.[3] As a proximate result of this attack, the plaintiff alleges that he received multiple stitches to his face, additional damage to his eye, severe headaches, and recurring nightmares. Again, the plaintiff alleges that he was denied further medical treatment following the initial treatment after the attack.

---

[3]The plaintiff maintains that when this second attack occurred, he was housed in Unit E-2, a special treatment unit. He further maintains that he was placed in that unit for his own protection because of his susceptibility to physical attack from other prisoners of the general population. However, the plaintiff notes that Unit E-2 houses inmates classified as being predators and/or having behavioral problems.

Based on the foregoing allegations, the plaintiff asserted the following grounds for relief:

(1) the DOC defendants and their officers, agents, assistants and employees individually and collectively were grossly negligent and deliberately indifferent to his safety and well being in violation of the Eighth Amendment; and

(2) the DOC defendants and their officers, agents, assistants and employees individually and collectively failed to provide adequate follow-up medical treatment to the plaintiff and thereby failed to prevent permanent brain and eye damage.

### B. The DOC Defendants' Motion for Summary Judgment

In support of their motion for summary judgment, the DOC defendants indicate that Officer Wratchford was not working on the G unit at the time of the June 23, 2004 assault and was not even in the facility at the time of the November 25, 2005 assault. Therefore, the DOC defendants argue that there is no set of facts that the plaintiff can show to overcome the Motion for Summary Judgment and Thomas Wratchford must be dismissed as a party to the complaint. In addition the DOC defendants argue that prison officials did not act with deliberate indifference to the plaintiff's safety, and therefore a grant of summary judgment is appropriate in this case. The DOC defendants also argue that the plaintiff did not suffer a serious injury in either attack, and therefore, cannot establish an Eighth Amendment violation. Furthermore, the DOC defendants allege that they are not the proper parties to the plaintiff's complaints about medical care. Finally, the DOC defendants allege they are entitled to qualified immunity against all claims of the plaintiff.

### III. Standard of Review

### A. Summary Judgment

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

4

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

5

## IV. Analysis

### A. Defendants, Commissioner Jim Rubenstein and Warden William Haines

To the extent that plaintiff is suing these individuals in their individual capacity, he has failed to state a claim. In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).

The plaintiff does not allege any personal involvement by these defendants with the attacks he alleges occurred at the Huttonsville Correctional Center in June of 2004 and November of 2005. Instead, he alleges these defendants are responsible for their staff and their staff's actions. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 Fed 2nd 1113 (4th Cir. 1982); Orum v. Haynes, 68 F.Supp.2d 726 (N.D.W.Va. 1999), or the following elements are met: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offense or practices,' and (3) there was an affirmative causal link between the supervisors inaction and the particular constitutional injuries suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct

engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisors continued inaction in the face of documented widespread abuses.'" Id.

A careful review of the plaintiff's amended complaint establishes that he has failed to assert credible allegations to support a finding that the elements necessary to establish supervisory liability are present. Accordingly, these two individuals should also be dismissed as defendants.

B. **The West Virginia Division of Corrections**

42 U.S.C. §1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982)

The West Virginia Division of Corrections is not a proper defendant because it is not a person subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 200) (unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amendable to suit under 42 U.S.C. § 1983); and Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.")

7

Accordingly, the West Virginia Division of Corrections should be dismissed as a defendant in this action.

## C. Defendant, Tom Wratchford

In his amended complaint, the plaintiff alleges that he was assaulted on June 24, 2004 in the G1 Unit. He further alleged that Tom Wratchford was the officer on duty in that unit when the attack occurred. However, in request for admissions, the plaintiff acknowledged that the assault actually occurred on June 23, 2004, at 1:50 a.m. (Doc . 77-7). The Shift Commanders Daily Shift Schedule indicates that the officer on duty in Unit G from 11:00 p.m. on June 22, 2008 to 6:00 a.m. on June 23, 2004 was Officer Barr. During those same hours Tom Wratchford was actually working the main entrance. (Doc. 77-8). The second attack occurred on November 25, 2005 in the E-2 Unit. Although the plaintiff does not name the guard, he alleges that only one guard was on duty at the time of the attack. However, Tom Wratchford was not working at all at the time of the second attack because it was his regularly scheduled day off. (Doc. 77-9).

Because Thomas Wratchford was not working on the G Unit at the time of the June 23, 2004 assault and was not even in the facility at the time of the November 25, 2005 assault, there is no set of facts that the plaintiff can show to establish liability on the part of Thomas Wratchford. Accordingly, he too should be dismissed as a defendant in this action.

## D. Failure to Protect

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For

a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837.

There is no dispute that the plaintiff was assaulted on two separate occasions by other inmates. While the plaintiff has failed to identify a proper defendant, it is clear based on the entire record that the plaintiff could not prevail on this claim even if he identified a proper defendant.

In his complaint, the plaintiff alleged that he had filed a grievance prior to the fight with Marcus Fleming reporting that he had received threats from that inmate. If true, that might provide a basis for finding that prison officials at Huttonsville were guilty of violating his Eighth Amendment Rights. However, in his deposition, he has recanted that allegation and clearly stated that he had no prior confrontation with Marcus Fleming. He further stated that until he was assaulted by Marcus Fleming, he had no idea that there was any problem with Mr. Fleming. In addition, he stated that he did not tell any staff member at Huttonsville that Marcus Fleming was mad at him or had threatened him. (Doc. 79, p. 9). Finally, he stated that he never told any staff member that he was afraid of Marcus Fleming. (Doc. 79-10). As with the June 23, 2004 assault, the plaintiff stated that prior to the November 25, 2005 incident with Eric Congleton, he did not

9

anticipate any problems with Eric Congleton and did not believe that correctional officers could have anticipated the attack. (Doc. 79, pp. 19-20).[4] Accordingly, the records establishes no facts from which any finding can be made that staff members at the Huttonsville were aware of any facts from which an inference could be drawn that the plaintiff was at risk of injury at the hands of another inmate.

**E. Medical Claims**

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[5]

---

[4]In fact, the plaintiff stated that he and Eric Congleton worked out together, and the day of the incident was the first time he had ever "had words" with him. Furthermore, when a correctional officer observed the exchange of words, he asked if everything was okay, and the plaintiff told him "We was just talking." (Doc. 79, p. 20).

[5] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

As previously noted, the plaintiff alleges that on June 24, 2008, he was brutally assaulted and battered with a clothes iron that resulted in his receiving multiple stitches to his face, permanent damage to his eye and eyelid, headaches, and recurring nightmares. The plaintiff alleges that after his initial treatment immediately following the attack, he sought further medical treatment but was refused any

---

the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

further medical assistance. Similarly, the plaintiff alleges that he was brutally attacked on November 25, 2005 and again required stitches to his face and suffered additional damage to his eye and eyelid and severe headaches. Again the plaintiff alleges that after the initial treatment immediately following the attack, he sought further medical treatment but was refused any further medical assistance.

Even if the court were to accept that the plaintiff's injuries amounted to serious medical conditions[6], the record as a whole disputes his claim that he was denied further treatment by the DOC defendants after the initial medical care was provided. In his deposition, the plaintiff stated that whenever he has asked to be seen by the nurse, that request has been granted. Furthermore, while the plaintiff asked to be seen again by the doctor after the two incidents, it was a nurse who told him repeat visits were not necessary and never correctional staff. (Doc. 79, p. 25). The undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990). Thus, the BOP defendants could rely on the opinion of the nurse as to whether the plaintiff needed additional medical care. Consequently, the undersigned finds that the plaintiff has failed to state a claim against the BOP defendants, and the complaint as it relates to inadequate medical care should be dismissed.

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the Motion for

---

[6] In h is deposition, the plaintiff stated that he suffers from headaches every four months or so, and he suffers from blurred vision every seven or eight months. However, he further stated that the headaches never keep him from doing his job at the facility, and he has never missed any kind of programming because of the headaches. Furthermore, he stated that although the scars from the stitches cause him some embarrassment, they cause him no pain. (Doc. 79-2, pp. 1-2).

12

Summary Judgment (Doc. 77) be **GRANTED** and the plaintiff's amended complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk is directed to send a copy to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: February 5, 2009

       /s/ James E. Seibert
      JAMES E. SEIBERT
      UNITED STATES MAGISTRATE JUDGE